RAVI NARAYAN (CABN 331858)
Attorney for the United States

RAVI NARAYAN (CABN 331858)
Acting Chief, Criminal Division

DAVID J. WARD (CABN 239504)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Facsimile: (415) 436-7234
    david.ward@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 21-CR-0356 WHO |
| Plaintiff, | **MOTION FOR LEAVE TO DISMISS INFORMATION AND [PROPOSED] ORDER** |
| v. | |
| RECOLOGY SAN FRANCISCO; SUNSET SCAVENGER COMPANY; GOLDEN GATE DISPOSAL & RECYCLING COMPANY, | |
| Defendants. | |

I.     <u>INTRODUCTION</u>

    The United States, by and through undersigned counsel, and for the reasons stated below, hereby seeks leave to dismiss the Information filed against the defendants in the above captioned-matter, *United States v. Recology San Francisco, Sunset Scavenger Co., and Golden Gate Disposal & Recycling Co.* (hereinafter "SF Recology Group"). Federal Rule of Criminal Procedure 48 allows the government, with leave of the Court, to dismiss an indictment, information or complaint. *See Fed R. Crim. P. 48(a)*. The parties can appear before the Court for a hearing on this motion if the Court so orders.

    On September 9, 2021, a one-count Information was filed charging the SF Recology Group with Conspiracy to Commit Honest Services Wire Fraud, in violation of 18 U.S.C. § § § 1343, 1346, and

1349. *Dkt. 1*. On the same day, the defendants and the government entered into a Deferred Prosecution Agreement. *Dkt. 2*. In the DPA, the defendant companies admitted their participation, through several high-ranking executives, in a sweeping bribery and corruption scheme involving a high-ranking San Francisco public official and other conspirators.

As part of its agreement in the DPA, the SF Recology Group defendants agreed to pay a $36 million fine, including $7 million paid to the City and County of San Francisco as part of a settlement of a civil suit brought by the City for the same conduct as described in this prosecution. *See Dkt. 2* (Deferred Prosecution Agreement). The SF Recology Group also agreed to develop and implement new corporate compliance and training programs, and to take other corrective measures to reform its corporate culture and practices. *Id.* As part of its compliance requirements, the defendants agreed to submit three annual reports to the government detailing its implementation of the compliance measures described and agreed to in the DPA. *Id. See Declaration of David Ward in Support of Motion to Dismiss Information*, **Exhibit A, Exhibit B** and **Exhibit C.**

The DPA provides that if the SF Recology Group defendants fulfilled the terms of the DPA, at the end of the three-year term, the government would move to dismiss the Information filed against the defendants. *See United States v. Goldfarb*, 2012 WL 3860756 (N.D. Cal. 2012) (internal citations omitted) ("deferred prosecution agreements are agreements by the government not to prosecute a potential defendant in return for an admission of conduct and a period in which the defendant is subject to certain conditions, such as the payment of restitution or the adherence to a corporate compliance program.").

The Recology defendants have met the requirements of the DPA, in both letter and in spirit. As described in detail below, the SF Recology Group has undertaken significant and meaningful efforts to change their corporate culture. They have implemented a substantial and sustained corporate anti-corruption program of training and monitoring, which continues to this day. They have hired over a half dozen senior executives with compliance and anti-corruption backgrounds, many with decades of experience, along with other employees. The companies have made wholesale changes to its Board of Directors, and have appointed a new slate of senior executives, both from outside the company, as well within its ranks. Finally, they provided substantial assistance to the government into its ongoing

investigations involving public corruption in San Francisco, including by providing significant cooperation in the government's prosecution of two corrupt former Recology executives and others with whom they conspired.

II. CASE BACKGROUND

The SF Recology Group was at the center of one of the largest corruption scandals in San Francisco history. In its DPA, Recology admitted that its senior government affairs executive, Paul Giusti, directed hundreds of thousands of dollars in bribes to Mohammed Nuru, the then-Director of the San Francisco Department of Public Works. *Dkt. 2-1* (Deferred Prosecution Agreement, Attachment A, Statement of Facts). The company admitted that the bribes were paid with the knowledge of two of Giusti's superiors, most directly former Recology Group Manager John Porter. *Id*.

As the company admitted in its DPA, Giusti secretly funneled hundreds of thousands of dollars of money from Recology in bribes to Nuru, paid intending to influence him to take actions to to benefit Recology. *Id.* These bribes included $60,000 from Recology paid to fund four lavish holiday parties that Nuru hosted for friends and political supporters, payments that secretly funneled to Nuru by Giusti and Porter through a corrupt San Francisco non-profit, The Lefty O'Doul's Foundation for Kids, run by co-conspirator Nick Bovis, concealed as "holiday donations"[1] Recology admitted that in addition to the holiday party payments, Giusti had Recology direct over $900,000 to two non-profits for a DPW-sponsored trash pickup program called "Giants' Sweep," at the direction and for the political benefit of Nuru. *Dkt. 2-1* (DPA, Attachment A, Statement of Facts). Finally, Recology admitted that Giusti arranged for one of Recology's companies to hire Nuru's son for a paid internship. *Id.* After senior Recology executives earned of his hiring, they ordered that the internship for Nuru's son be terminated. *Id.* Giusti then arranged for Nuru's son to be employed at another non-profit, and arranged for Recology to pay for that internship as well. *Id.*

Recology admitted that all the payments were made intending to influence Nuru to use his position and influence to benefit Recology. *Dkt. 2.* At the time, Nuru was the highest-ranking City of

---

[1] Bovis pled guilty to one count of conspiracy to commit honest services wire fraud and one count of insurance fraud, and was sentenced on March 7, 2024 to nine months imprisonment and fined $100,000. *See United States v. Nick Bovis*, 20-CR-0204 WHO.

San Francisco public official overseeing Recology's business with the City, and he had enormous influence over the rates Recology could charge, various fees Recology charged the city, and sway over a range of other financial or operational issues affecting and impacting Recology. *Id.* As Paul Giusti stated in his plea agreement, a happy Nuru was good for Recology's business and an unhappy Nuru could be very bad for Recology's business. *United States v. Paul Giusti*, 21-CR-00294 WHO, *Dkt. 40-1* (Plea Agreement).

The conspiracy ended on January 6, 2020, when FBI agents executed search warrants and questioned Nuru. Charges against Nuru were filed a week later, on January 15, 2020. *United States v. Mohammed Nuru*, 21-CR-0490 WHO *Dkt. 1*. Nuru pled guilty on January 6, 2022*, Id. Dkt. 95*. On August 15, 2022, the Court sentenced Nuru to 84 months imprisonment and imposed a $30,000 fine. *Id., Dkt. 125.* Giusti pled guilty on August 12, 2022 to one count of Conspiracy to Bribe a Local Official and to Commit Honest Services Wire Fraud in violation of 18 U.S.C. § 371 and agreed to cooperate with the government. *United States v. Paul Giusti*, 21-CR-00294 WHO*, Dkt. 40* (Plea Agreement). On December 14, 2023, Giusti was sentenced to three years of Probation, including six-months of home confinement, and was fined $30,000. *Id., Dkt. 57* (Judgment)

Former SF Recology Group Manager John Porter was charged by Complaint on April 13, 2021 with one count of Conspiracy to Commit Honest Services Wire Fraud, and then charged by Indictment on July 21, 2022. *United States v. Porter*, 22-CR-0270 WHO, *Dk1. 1* (Complaint), *Dkt. 40* (Indictment*)*. Porter pled guilty on May 3, 2023, 26 days before his trial was set to commence. *Id.*, *Dkt. 108.* Porter did not cooperate. On September 21, 2023, the Court sentenced Porter to three years of Probation, including six-months of home confinement, and fined him $30,000. *Id., Dkt 116.* (Judgment).

III. RECOLOGY COMPLIANCE PROGRAM

Beginning even before entering into its Plea Agreement, Recology began taking steps to reform its corporate culture. These actions, which have continued throughout the period of its DPA, have been in the government's view genuine, significant, and impactful. They include significant changes to its Board of Directors and Executive Leadership team, and the adoption of a robust, ongoing compliance and training program. The SF Recology Group has also provided cooperation and substantial assistance to the government in its public corruption investigations involving San Francisco public officials.

### a. Executive Leadership Changes

Beginning almost immediately after the government's investigation into Recology became public in 2020, the company undertook significant changes in its executive leadership, starting with the then-CEO, who in 2020 resigned and stepped down from Recology's Board. *See Ward Decl.*. **Exhibit D**. Shortly thereafter, the former COO, named as Executive 2 in the DPA, resigned and was replaced by a former Group Manager from Recology's Southern California group. *Id.* Carey Chen, the SF Recology Group's Chief Legal Officer, was promoted to Executive Vice President and Chief Risk Officer, and in 2023 was named to the companies' Board of Directors. Mr. Chen was the Recology executive who, along with outside counsel, led the companies' cooperation with the government's corruption investigations and prosecutions.

In addition, as part of the development and implementation of its compliance program, Recology hired six outside auditors or attorneys, including as Associate General Counsel and Director of Compliance a former senior FBI counter-terrorism official, and, as Head of Internal Audit, a former KPMG executive with 25 years of audit experience, both of whom report directly to Chen, the Chief Legal and Compliance Officer. *Id.* **Exhibit A**, pg. 9.

### b. Board of Directors

Before the government's criminal investigation became public, Recology's Board of Directors consisted of seven members, including the then-Chief Executive Officer. By April 2021, seven of the eight board members had resigned, retired, or had been voted out of office by the company's ESOP (Employee Stock Ownership Plan) committee. *Ward Decl.,* **Exhibit D**. Current board members include Recology's new Chief Executive Officer, Chief Legal Officer Chen, and two independent outside directors. *Id.* **Exhibit C.**

### c. Compliance Program

Recology has built a substantial and ongoing compliance program that includes a new compliance department, new hires, regular training for employees, enhanced training for managers, as well as regular communications to employees related to compliance issues. *See Ward Decl.,* **Exhibit A**.

Recology has conducted multiple training programs in 2022 and 2023 for all employees, and additional training programs in 2022, 2023, and in April 2024 for managers and corporate directors,

including one-on-one in-person trading for all managers and vice presidents on the company's Code of Conduct, as well as ethics, conflict of interest, and antitrust and competition law. *Ward Decl.*, **Exhibit C**, pg. 25-30 (Chronology of Significant Compliance Program Updates). In 2024, Recology launched a monthly Compliance Insights newsletter distributed to employees addressing code of conduct and corporate compliance issues. *Id.* Throughout the period of its DPA, the SF Recology Group has made repeated and sustained efforts to communicate to its employees and managers its new rules and guidance on key anti-corruption measures, including its new gifts and charitable contributions policy, new limits on political contributions, and other measures designed to deter and detect corruption. *See Ward Decl.* **Exhibit A**, pp. 9-14. All of the policies now limit or bar these types of donations or payments, and impose new approval mechanisms for the ones that are still allowed. In 2024, Recology explicitly barred political contributions to any elected official or candidate in the City of San Francisco by the company or its senior leadership, even in their individual capacity. *Id.* **Exhibit C.** pg. 14.

    d. <u>Recology's Cooperation</u>

Recology also provided significant cooperation with the government in its investigation into corruption among San Francisco public officials and other conspirators. Specifically, Recology provided substantial assistance in the prosecution of former Recology executive John Porter. For almost nine months, Recology provided documents to the government, made multiple witnesses available for interviews and trial (if needed), and both outside and internal counsel (led by Now Chief Legal Officer Carey Chen) provided guidance and direction to the government as it prepared for trial against defendant Porter. In the end, Porter pled guilty before trial, but Recology nonetheless by any measure provided substantial assistance to the government.

IV.     CONCLUSION

Recology's crimes were a stunning betrayal of the duties that it owed to the City of San Francisco, its employees and shareholders, and its customers. For years, the companies' culture allowed a corrupt senior executive, Giusti, engage in years of bribes to one of the companies most powerful regulators. The conduct was only stopped after it was targeted in the government's San Francisco corruption investigations. It was a grave failure by one of San Francisco's most significant local companies.

Motion For Leave to Dismiss
Information and [Proposed Order]         6

But since the corruption was exposed, Recology has taken true steps to meaningfully reform itself, as described above. They have met the requirements of the DPA and the government therefore respectfully asks the Court to grant it leave to dismiss the Information.

DATED: October 3, 2024

RAVI NARAYAN
Attorney for the United States

*/s/ David Ward*
DAVID J. WARD
Assistant United States Attorney

Motion For Leave to Dismiss
Information and [Proposed Order]                    7

|     |                                                      |                                          |
| --- | ---------------------------------------------------- | ---------------------------------------- |
|     | UNITED STATES DISTRICT COURT                         |                                          |
|     | NORTHERN DISTRICT OF CALIFORNIA                      |                                          |
|     | SAN FRANCISCO DIVISION                               |                                          |

UNITED STATES OF AMERICA, ) NO. 21-CR-0356 WHO
 )
 Plaintiff, ) ORDER ON MOTION FOR LEAVE TO DISMISS
 ) INFORMATION
 v. )
 )
RECOLOGY SAN FRANCISCO; SUNSET )
SCAVENGER COMPANY; GOLDEN GATE )
DISPOSAL & RECYCLING COMPANY, )
 )
 Defendants. )
 )

**ORDER**

Based on the representations of the parties, and for good cause shown, and pursuant to Fed. R. Crim P. 48(a), the government is hereby GRANTED leave to dismiss the Information in *United States v. Recology San Francisco, Sunset Scavenger & Golden Gate Disposal & Recycling Company*, 23-CR-0356 WHO.

**IT IS SO ORDERED.**

Dated: _____

 _____
 HON. WILLIAM H. ORRICK
 United States Senior District Judge